UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v.   ) | |
| ) | Case No.: 5:22-cr-0165-LCB-HNJ |
| JOSHUA EUGENE GAINES, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

Joshua Eugene Gaines moved to suppress evidence seized pursuant to a search of a vehicle in which he was a passenger. (Doc. 15). After initial briefing, the magistrate judge assigned to this case conducted a hearing, allowed supplemental briefing, and ultimately entered an extensive report recommending this Court deny Gaines's motion. (Doc. 42). Gaines has filed several objections to the report and recommendation, which this Court will now address. (Doc. 43).

The facts underlying this case are largely undisputed as the entire encounter was captured by officer-worn body cameras. The magistrate judge gave a thorough recitation of those facts in his report and recommendation, so this Court will not give an exhaustive rendition. Briefly, Gaines was the passenger in an automobile that was pulled over for having a faulty tag light. Immediately after the officers made contact with the driver, Angela Riley, she informed them that she did

not have a valid driver's license. In an attempt to find another occupant who could legally drive the car—there were two additional passengers besides Gaines and Riley—officers gathered identifying information from the remaining passengers. Only one of those passengers had a physical copy of a driver's license, so the officers asked everyone else to write their identifying information on a notepad being passed between them. While the passengers were writing their information, Officer Johnson asked if there were any "guns, knives, drugs, bombs, anything like that" in the vehicle, to which Riley replied in the negative. Officer Johnson then asked for and received consent to search the vehicle.[1] After all the passengers were removed from the vehicle, Officer Johnson began his search and discovered a firearm inside of a backpack sitting in the middle of the back seat. Gaines ultimately claimed ownership of the gun and was arrested for being a felon in possession of a firearm.

Relying primarily on *Rodriguez v. United States*, 575 U.S. 348, 355 (2015), Gaines argues that the officers impermissibly deviated from the mission of the traffic stop, i.e., investigating a faulty tag light, and engaged in unrelated activity that extended the duration of the stop in violation of the Fourth Amendment. In *Rodriguez*, the Supreme Court held that police officers may not extend a traffic stop in order to investigate matters not related to the purpose of the stop. There,

---

[1] Gaines does not dispute that Riley consented to the search.

officers stopped Mr. Rodriguez's vehicle for driving on the shoulder of the highway in violation of state law. After attending to all matters necessarily related to the stop, including checking licenses and issuing a warning citation, the officer asked for and received permission to conduct a canine sniff of the exterior of the vehicle. This led to the discovery of methamphetamine for which Rodriguez was arrested. In its opinion remanding the case, the Supreme Court held that the canine sniff was improper because, absent reasonable suspicion, police officers may not engage in activities unrelated to the mission of the stop if those activities extend the duration of the encounter.

Gaines argues that the officers in this case violated *Rodriguez* by engaging in various dilatory activities that, he says, were unrelated to the mission of the stop. According to Gaines, Officer Johnson's questions about contraband, travel plans, residence, and his request for consent to search, were all unrelated to the purpose of the stop and extended its duration. Therefore, he says, the gun is due to be suppressed as the fruit of an unconstitutional search and seizure. The magistrate judge disagreed and recommended this Court deny the motion. Gaines's objections followed.

### I. Objections to Factual Findings

Gaines first objects to the magistrate judge's factual finding that "the unrelated detours that Officers Johnson and Baker took during the stop occurred

simultaneously with elements of the traffic mission and therefore did not extend the stop." (Doc. 43 at 3). Gaines correctly asserted that the government must prove that the unrelated activities did not add time to the stop. According to Gaines, Officer Johnson's questions about contraband, littering, and travel plans added time to the stop because in order to answer those questions, whoever was writing had to stop, listen, and respond to the question. Therefore, Gaines says, the questions added time to the stop and were consequently improper. Gaines also argues that Riley's consent was invalid as a matter of law because it was obtained after the officers impermissibly extended the duration of the stop.

Having reviewed the record in this case, including the bodycam footage, this Court disagrees with Gaines. At approximately 2:14:01, as reflected by the timestamp on Officer Johnson's bodycam video, he hands his notepad to the driver and asks her and the other passengers to write down their information so that he can, among other things, identify a licensed occupant who can drive in Riley's place. A few seconds later, while Riley is still writing her information, Officer Johnson asks one of the backseat passengers about littering because, Officer Johnson testified, he had seen that passenger throw trash from the window shortly before he pulled the car over. Officer Johnson then turns back to Riley and asks about her destination. While a few seconds ticked by as Riley processed the question and gave her answer, this is a necessary facet of any conversation, and the

4

magistrate judge was not incorrect in classifying this question as occurring simultaneously with the gathering of information. Were that not the case, officers would be required to remain entirely silent and still in situations like this lest any of their words or actions cause any amount of momentary distraction, however slight. The undersigned agrees with the magistrate judge's finding that Officer Johnson's questions about Riley's destination occurred simultaneously with the gathering of information. Accordingly, the questions did not add time to the stop so as to invalidate Riley's consent.

Gaines similarly argues that no mission-related activity was taking place when the officers removed the occupants from the vehicle and frisked them. However, at that point, consent for the search had been given, and all the occupants necessarily had to be removed from the vehicle and frisked for the officers' safety. Thus, this Court does not find that these actions impermissibly added time to the stop.

Gaines also argues that the magistrate judge incorrectly found that the officers were diligent in their investigation. He correctly points out that the officers asked few questions about the broken tag light, i.e., the mission of stop, and instead engaged in the above-noted inquiries. However, the mission of the stop changed almost immediately upon Officer Johnson's encounter with Riley because he learned that she could not legally operate the vehicle. Thus, it was

imperative that he attempt to locate another licensed driver. Officer Johnson did so by asking the other occupants to write down their identifying information. Gaines acknowledges that this is appropriate but argues that the way the officers went about it was more intrusive than necessary. Gaines points out that the officers had already obtained information about three of the four occupants at the time Riley gave her consent. Therefore, he says, the officers could have begun at least a partial records check as opposed to continuing to ask questions. He also argues that, because one of the backseat passengers, Jeremy Beauchamp, stated that he had a valid license early in the encounter, Officer Johnson could have checked his information before proceeding to gather that of the other occupants. According to Gaines, this would have sped up the traffic stop.

    But this Court disagrees and finds, as the magistrate judge did, that it was entirely reasonable for the officers to collect all the occupants' information before beginning their records check. For one, Officer Johnson testified that in order to run a records check, he first has to switch his radio to a different channel that is connected exclusively to the records department. Therefore, he would not be able to call for assistance on that channel in the event of an emergency. Thus, doing the records check as Gaines would have it done could create unsafe conditions for the officers because of the requirement that they switch to a channel exclusively devoted to records. Doing it Gaines's way would also require the officers to

retrieve the notepad from each occupant each time one completed writing their information, switching to a different radio channel, calling in that information, waiting on the records department to complete their check, and then returning the notepad to the next occupant and repeating that task until finished. This Court finds it likely that Gaines's method would have actually added time to the stop. But, even if it took the same amount of time, the Court does not find Officer Johnson's method to be unreasonable or improper.

    Gaines also asserts that the record does not reveal whether the officers ever located a licensed driver that night. Although he admits that they allowed the other three occupants to drive away that evening with a warning, neither the police reports nor anything else indicates that they ever found a licensed driver. Gaines contends that the lack of such information in the record undermines the magistrate judge's conclusion that the officers were diligent in their task. Gaines similarly points to the fact that there is no information in the record indicating whether the officers inquired into the vehicle's registration or insurance. This Court does not find that the lack of that information in the record calls any of the magistrate judge's conclusions into question. Gaines's argument on this issue is undoubtedly colored by his subjective belief that the officers' intent was really to investigate general criminal activity as opposed to the tag light or the lack of a licensed driver.

However, he has pointed to nothing that would call the magistrate judge's reasoning or conclusions into question.

Finally, Gaines asserts that the report and recommendation "appears to adopt a theory of *Rodriguez* that is itself inconsistent with *Rodriguez*." (Doc. 43 at 13). Specifically, Gaines appears to read the report and recommendation to say that a traffic stop cannot be unlawfully extended at or near its inception because it would be impossible for the stop to have been completed at that point. In the report and recommendation, the magistrate judge stated that "one must assess whether a traffic stop should have been completed when an officer fields an unrelated inquiry while performing the stop's mission." (Doc. 42 at 34). Even taken out of context, this Court does not find this sentence to reflect what Gaines says it does. Read as a whole, the report and recommendation correctly states and applies the holding from *Rodriguez*.

## II. Frisks and Searches of the Occupants

Gaines next objects to the magistrate judge's conclusion that the delay caused by the frisks and the searches of the car's occupants was not causally related to the search. Gaines notes that "the officers undertook the frisks and searches of the occupants for the purpose of being able to safely conduct a search of the car." Gaines again cites *Rodriguez* for the principle that detours from the mission of a traffic stop are impermissible if they lengthen the duration of the stop.

*Rodriguez* also holds that safety precautions to facilitate such detours are in themselves impermissible detours that prolong a stop. However, this argument presumes that *Rodriguez* had already been violated when the frisks occurred, i.e., the officers' questions and request for consent improperly prolonged the stop. However, as noted in the previous section, the magistrate judge correctly concluded that the officers did not violate *Rodriguez* because the detours Gaines points out occurred simultaneously with the permissible activity of gathering identifying information for the purpose of finding someone who could legally operate the vehicle. Accordingly, this objection is without merit and due to be overruled.

Gaines also asserts that the magistrate judge applied the wrong standard in evaluating the frisks and searches because he cited to cases involving the seizure of property rather than of citizens. (Doc. 43 at 15), citing (Doc. 42 at 54). However, these citations appear in a section of the report and recommendation discussing the scope and duration of a consent search. The fact that the cited cases concerned property does not affect that analysis. As discussed above, the magistrate judge properly applied *Rodriguez* to the facts of this case.

### III. Gaines's Prolonged Detention

Gaines next points to the magistrate judge's conclusion that the driver, Riley, lacked the apparent authority to consent to the search of the backpack

located in the back seat, and argues that this lack of apparent authority means that she could not consent to the stop being prolonged so that the officers could search the backpack. However, Gaines does not object to this finding. Rather, he uses it to advance an argument that was not put before the magistrate judge. Specifically, Gaines argues that, because Riley could not consent to the search of the backpack, the search of that backpack necessarily prolonged the stop.

However, this specific argument does not appear to have been put before the magistrate judge. While Gaines argued in his amended post-hearing brief that Riley lacked authority to consent to the search of the backpack, he did not argue, as he does here, that the search of the backpack prolonged the stop in violation of *Rodriguez*. Rather, he argued that because Riley's consent did not extend to the backpack, it was improper to search it without more. Specifically, noting Officer Johnson's testimony about feeling what he believed to be a gun in the backpack, Gaines argued that the "plain-feel" or "plain-touch" doctrine would not apply, and consequently there was no legal basis for officers to search the backpack.

The Eleventh Circuit has held that a district court does not abuse its discretion by refusing to consider an argument raised for the first time in an objection to a magistrate judge's report and recommendation. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). That court noted that "'allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their

strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act.'" *Id*., quoting *Greenhow v. Sec'y of Health & Human Servs*., 863 F.2d 633, 638 (9th Cir.1988), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir.1992) (en banc). Because this is a different argument from the one raised before the magistrate judge, this Court declines to consider it.

### IV. Whether Riley's Consent Applied to Gaines

Gaines next argues that it was improper to prolong his detention while the officers conducted the consent search because, he says, he was not free to leave during that time, and Riley's consent to vehicle's search did not extend to him. Specifically, Gaines objects to the magistrate judge's conclusion that Riley's consent converted the initial detention into a consensual encounter as to Gaines.

Gaines points to the magistrate judge's citation to *United States v. Gonzales*, 275 F. App'x 930, 933 (11th Cir. 2008), for the proposition that a driver's consent to search may also be construed as a consent to detention. According to Gaines, the facts in *United States v. Purcell*, 236 F. 3d 1274, 1279 n. 8 (11th Cir. 2001), which is quoted in *Gonzales*, are distinguishable from the facts in this case because in *Purcell* the traffic stop was concluding when the officer asked for consent to search. Therefore, the stop in *Purcell* had become a consensual encounter by the time the officer asked for consent.

This Court does not find the magistrate judge's reliance on *Gonzales* or *Purcell* to be misplaced, especially where his report and recommendation also cites to numerous other Eleventh Circuit cases standing for a similar proposition. *See, e.g.* (Doc. 42 at 37), citing *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999) (stating that "further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter"); *United States v. Burwell*, 763 F. App'x 840, 844-45 (11th Cir. 2019) ("The Fourth Amendment allows lengthening the traffic stop for unrelated inquiries in only two situations. . . . Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter."). Thus, even if the facts of *Purcell* are distinguishable from the facts here, Gaines has not shown that the magistrate judge erred and did not attempt to distinguish any of the other cited cases.

### V. Citations to Pre-*Rodriguez* Cases

Gaines next objects to the magistrate judge's citation to pre-*Rodriguez* cases to support his conclusion that officers can prolong a traffic stop to conduct a consent search of a vehicle. According to Gaines, those are no longer good law. However, he does not specifically point out which cases he contends were improperly cited. Rather, he cites other cases for the proposition that police cannot use consent searches as a justification for prolonging a traffic stop. But the cases

Gaines cites are all distinguishable because in each of those cases, a Fourth Amendment violation preceded the request for consent. Specifically, in those cases the courts found that officers prolonged the stops in order to ask for consent. As discussed in prior sections of this memorandum opinion, that did not happen here. Officer Johnson asked for and obtained Riley's consent while the other occupants were writing their information on his notepad. Accordingly, there was no Fourth Amendment violation preceding the request for consent.

## VI. Reliance on *United States v. Vargas*

Gaines next points to the magistrate judge's reliance on *United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017), and argues that his reading of the case is incorrect. According to Gaines, the magistrate judge cited *Vargas* for the blanket proposition that a consent search permits prolongation of a police encounter to conduct that search. In his report and recommendation, the magistrate judge wrote: "Riley's consent for the officers to search the vehicle—while they performed stop-related duties—permits prolongation of the police encounter to effect the search." (Doc. 42 at 36), citing *Vargas*.

While *Vargas* may not have specifically held that a consent search justifies a prolonged stop—in *Vargas* the court found no Fourth Amendment violation because the officer's mission-related duties were ongoing when he asked for consent—it does not compel a different result in this case. The magistrate judge

13

went on to cite several other cases for the same proposition. *See* (Doc. 42 at 36-37). Thus, even if the magistrate judge read *Vargas* to be broader than it is, his report and recommendation cites plenty of authority to support his holding as noted above. *See* (Doc. 42 at 37). Accordingly, Gaines is due no relief on this issue.

## VII. Detention of Non-Consenting Passengers

Gaines next argues that even if Riley's consent to search justified her prolonged detention, her consent did not flow to him or the other passengers. According to Gaines, the magistrate judge did not explain how Riley's consent legitimized his ongoing detention. Gaines objects to any finding that he consented to a prolonged detention or any search.

As noted above, there were no Fourth Amendment violations leading up to the point at which Riley consented to the search of the vehicle. At that point, the officers necessarily had to remove the occupants and frisk them for the officers' safety. Thus, the only potential time that Gaines could object to being improperly detained would have begun after he was removed from the vehicle. While Gaines argues now that he did not consent to a prolonged detention, this Court notes that he never inquired into the circumstances of his detention. Rather, when Officer Baker asked Gaines to step out of the vehicle, Gaines replied, "alright, let me grab my cigarettes right quick," and complied. (Baker Bodycam at approx. 2:17:15). Officer Baker then frisked Gaines, and asked if he could look inside Gaines's box

of cigarettes. Gaines replied, "go for it." *Id.* at 2:18:06. After looking inside the box of cigarettes, Officer Baker said, "you're good, man." *Id*. at 2:18:10. Gaines then walked to the rear of the vehicle and joined two of the other occupants. These statements, as well as Gaines's demeanor as seen from the bodycam footage, leads this Court to conclude that he did consent to the detention while the search of the car was ongoing.

This is further bolstered by Gaines's failure to object to Riley's consent even though, Gaines said, his mother was in the process of buying the vehicle from his aunt. Gaines asserts that the bodycam footage demonstrates that he did not hear Officer Johnson ask Riley for consent because, at the time he asked, Gaines had been interacting with Officer Baker and was turned to face a backseat passenger. Having reviewed the footage, however, this Court finds that at the time Officer Johnson asked for consent, Gaines was not speaking or being spoken to, and his head was turned in Officer Johnson's general direction. While it is impossible for the Court to positively say whether Gaines did nor did not hear the question, the video does not support his contention that "there is no basis to conclude that Mr. Gaines heard Officer Johnson's request or Ms. Riley's response, or that he knew that the search of the car was based on Ms. Riley's consent." (Doc. 43 at 25). As this Court views the evidence, there is such a basis. Accordingly, Gaines is due no relief on this issue.

**VIII. Gaines's Standing to Challenge the Search of the Backpack**

The magistrate judge concluded that Gaines lacked standing to challenge the search of the backpack in which the gun was found because he was not the owner of the backpack[2]. Gaines objects to this finding and argues that he does have standing to challenge the search of the backpack based on *Brendlin v. California*, 551 U.S. 249, 251 (2007), in which the Supreme Court held that a passenger in a vehicle has standing to challenge the constitutionality of a stop. However, that holding is not as expansive as Gaines reads it. The petitioner in *Brendlin* argued that the lower courts were incorrect in holding that because he was not the driver of the vehicle, he lacked standing to challenge the constitutionality of the *stop*. The question *Brendlin* did not deal with a search at all[3]. Rather, Brendlin argued that the police did not have justification to initiate the traffic stop. The Supreme Court held only that Brendlin could challenge that justification. The Court notes that Gaines has not challenged the basis for the stop. Thus, *Brendlin* does not afford him any relief.

Gaines also generally argues that, because he was a borrower of the car—presumably because his aunt was the owner—he has standing to challenge the search of the car. Gaines then infers that because he has standing to challenge the

---

[2] Later in the bodycam footage, after Gaines was transported to the jail, he made statements indicating that the bag was not his, but that he knew who the owner was.

[3] After the police pulled over the vehicle in which Brendlin was riding, the officers determined that Brendlin was a parole violator and searched him incident to a lawful arrest.

search of the car in general, that standing should also cover the search of the backpack. This appears to be an attempt to get around the fact that Gaines admitted he did not own the backpack. Also, like Riley, Gaines was a front-seat passenger who, absent some statement to the contrary, would likewise lack any apparent authority over the backpack. Gaines cites no case for the proposition that a borrower of a vehicle has standing to challenge the search of a container in a vehicle that he admittedly does not own. Accordingly, Gaines is due no relief on this issue.

Finally, Gaines asserts that he never expressly disclaimed ownership of the backpack and objects to the magistrate judge's finding to the contrary. This contention is without merit. While Gaines did not say "that is not my backpack," he did say, when Officer Johnson told him that the gun was found in the backpack, "I know whose stuff that is. I'm gonna beat his ass when I get out." (Johnson bodycam at approx. 3:01:05). Gaines had already admitted that the gun was his, so the "stuff" he was referring to could only be the backpack. Accordingly, this Court finds that Gaines did adequately disclaim ownership of the backpack.

## IX. Conclusion

Having reviewed *de novo* the entirety of the record, the Court hereby **ADOPTS** the magistrate judge's report and **ACCEPTS** his recommendation. The Court has also considered Gaines's objections (Doc. 43) to the report and

17

recommendation and **OVERRULES** those objections. Consistent with the magistrate judge's recommendation, Gaines's motion to suppress (Doc. 15) is **DENIED**.

      **DONE** and **ORDERED** August 15, 2023.

*/s/ Liles C. Burke*

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE